Thank you, Your Honors. May it please the Court, Suzy Ratkis on behalf of the appellant Tracy Ann Grijalva and a putative class of consumers who were all the subject of consumer reports published by ADP, the appellee, to third parties that contained items of adverse information other than criminal convictions that are otherwise not enumerated in the statute and which antedate or predate the consumer report by seven years. So to determine whether it was obsolete, do we need to consider that the exclusion was continuing in nature and had not been completed and also that Ms. Grijalva had not been reinstated to her nursing license? Thank you, Judge. I think that's one of the central questions in this case, but if the Fair Credit Reporting Act means what it says, that is not an exception to this requirement. And if this Court's precedent in Moran v. Screening Pros means what it says, we are to look at the date of the adverse item of information. And in this case, there were two things that happened. The first thing was that Ms. Grijalva's nursing license was revoked in February of 2011. And then later in July of 2011, that revocation led to an exclusion from the Health and Human Services award list. And thus, her revocation appeared as an exclusion on two different government registries. The license revocation happened one time. The exclusion happened one time. Because it continues to appear and because she hasn't been reinstated, does not affect those triggering dates. How does it not affect? I mean, it's something that's currently in effect. So the fact that it may have started quite some time ago doesn't change the fact it's still in effect? Yes, her exclusion is still in effect, Judge. That's right. And it's still available on the public record. But the Fair Credit Reporting Act strictly regulates and governs what a consumer reporting agency is able to compile and report about a person. It's aimed at eliminating stale information. If it's still in effect, why is it stale? Well, in this case, it's not necessarily stale. What is clear is that the information is outside the seven-year period of time provided in the catch-all of the obsolescence provision. And one of the purposes of that is not just to eliminate stale information. It's so information exactly like this doesn't haunt someone forever. But if it's still in effect, why shouldn't it haunt her forever? She is excluded. If that were the only thing that they were reporting, that might carry some weight, Your Honor. However, you're distinguishing between two things, whether she's currently excluded or excluded at the time of the reporting and why she was excluded, the fact that her license had been revoked. So sort of tagging on to Judge Clifton's point, isn't the fact of her exclusion critically important to an employer in the healthcare industry because they couldn't recover, they couldn't charge for her services because she's excluded if there were services provided to HHS? Okay. So you raise something that's separate and apart from her consumer report. Again, the Fair Credit Reporting Act strictly governs what a consumer reporting agency, someone who gathers information and sells it. This information is still available. It doesn't prohibit HHS or GSA from reporting it. And if her nursing license, if she had applied for a nursing because in Arizona, you need a nursing license to do a job that would be paid for by an award from HHS. If that happened, they could still get that information. You could still get that information. However, a consumer reporting agency is not authorized to report it when the triggering events are so intertwined, they can't get in through the back door, what they couldn't get in through the front door. I'm looking at ER 234. That's the listing, one that comes from SAM, and then the other one that comes from HHS-OIG. On the HHS-OIG, I see the offense description, which says license revocation or suspension minimum period, no less than the period imposed by state licensing authority. Does the SAM, does the Z1 offense code reveal something? That's the SAM report. So, SAM does not have any text. It just says Z1. Does that describe the offense? Can you go to Z1 and figure out what this is? I think the answer is yes, Judge. I can't answer that question for you right now because I don't know what the code is that correlates to that SAM. So, are you only complaining about the report from the HHS-OIG? No, Judge, because in the SAM report, it does give a date, and the date is of the exclusion. Well, the date of the exclusion, that's not a problem. It's only the revocation that you're concerned about. No, Judge, the date of the exclusion is also a problem. The date of the exclusion is also an adversary of information that predates or antedates the report by seven years or more. Wait, you can't, you can report the exclusion, but you can't say you've been excluded since 2011? Under the Fair Credit Reporting Act, yes. What about the fact that the exclusion is ongoing? So, she was excluded in 2011, and also in 2012, and 13, and 14, and 15. So, the fact of the exclusion existed beyond the simple date of when it was imposed. So, this ongoing nature of the exclusion seems to mean it didn't end, and so it was within the seven years. I guess, if the exclusion had been terminated, it ended, that would seem to be the endpoint under Moran, and then an agency couldn't report it from that date seven years forward. Or from seven years, you know, back to the seven years. So, there's no exception under the Fair Credit Reporting Act for something called an active or ongoing exclusion. The exclusion... You're arguing for something that seems highly illogical. Is there a reason, justification why that information should be removed if it is, in fact, currently in effect, that exclusion? A consumer reporting agency should not be reporting those items of information that fall under the catch-all provision, Your Honor. Why not? Information is still available to protect employers. They just can't buy it from a consumer reporting agency. Why not? Because Congress decided to make sure that these kinds of events are not reported past seven years. You're offering no logic for this position. You're just trying to say the statute's worded that way, so we should disregard logic and say a consumer reporting agency can't provide this. But if somebody wants to dig into the government records, they can find it and that's fair game. That doesn't make any sense to me. And why should we interpret a statute in a nonsensical manner? Well, it makes very good sense because it is... It comports with the overarching remedial purpose of the Fair Credit Reporting Act. And it also, in this case, Judge, she was not applying for a nursing position. She was applying for a customer service consulting position. It had nothing to do with her nursing license. And while that... The employer could make that judgment if he decided... If whoever the prospective employer was decided not, this isn't relevant. I don't know why that's the reporting agency's concern. The reporting agency's... I'm not sure what your question is, Judge. I'm not sure what the logic is in the position you're espousing. You're arguing the statute requires this, but you've given me no reasonable justification for why this information should be removed from the record, not available to an employer, not available through the ADP report. Why shouldn't it be available if it, in fact, is a current limitation on what she can do and what she can charge or her employer can the government for? Well, it's not an exception under the Fair Credit Reporting Act. You're back to the wording of the statute, but no logic for it, huh? Still no logic for it. The wording of the statute says, perhaps a disclosure of, quote, any other adverse item of information. That's the catch-all. Any other adverse item of information other than records of convictions of crime, which annotates the report by more than seven years. So you're hanging your whole argument on what is the meaning of any other adverse item of information and suggesting that means a one-time event, even if that adverse item of information continues to this day. We can't say the time has lapsed. We have to say the time has lapsed because it began more than seven years ago. So you keep saying the statute requires this or says this, but the statute says what I just read to you. So that's your, to be clear, your interpretation of what you think an adverse item of information means. Well, and it's what this court discussed in depth in Moran. Moran's- Moran doesn't help you. Moran was a dismissed criminal charge. So there was nothing ongoing from Moran. In the reasoning of Moran in the court's discussion of the catch-all phrase, I mean, it did relate its reasoning to this one particular item. You could see a criminal dismissal in records. That's something that never, you know, there was a crime charge, the dismissal happened. You can find that in a public record. But isn't this case more like a conviction? So if the person had been convicted of a crime and they were imprisoned, the fact of their imprisonment is ongoing, that you would argue that it couldn't be reported if the person were still imprisoned, that we could only report it from the first day of their imprisonment. And then after that, that's not an adverse item of information that antecedents the report by more than seven years. Your Honor, criminal convictions are a special category. They can always be reported. There's no period of time where they don't- Sure, but I'm not talking about the conviction. I'm talking about the fact of their incarceration or the fact that they're subject to a warrant or that they have an unpaid lien. I mean, there's all sorts of things that are continuing in nature. So those three categories are very different from this category. An unpaid lien is something that is outstanding. That person has an obligation. And so a creditor or an employer might be interested in the fact that there's some kind of a money that needs to be paid. Can they report how long the lien has been in place? I'm not sure about that, Judge. If it's more than seven years, if the lien's been around for more than seven years, can they report the date on which the lien was filed? Well, I think that it's very consistent with what ADP's argument was and what the district court decided is that the- Yeah, I really would like to know what you think the answer is, Counsel, because I've got to tell you. I understood your argument about not reporting on the revocation. You really lost me when you said that they can't report the date of the exclusion. Ms. Grijalva's under no obligation to go back and get her CNA license. She never intends to go back- I just don't understand why they can't report the date of the exclusion. The exclusion is ongoing. You don't contest that ADP can report the fact of exclusion. It's ongoing. So, you don't contest that at all. I don't agree with the characterization that it's ongoing. She is excluded. So, the date of the exclusion is something that antedates the report by more than seven years. And so, that would be excluded under CA-5. Okay. Counsel, you've just got a couple of the questions of negligent and willful noncompliance. Are you suing for negligent noncompliance or just for willful noncompliance or both? Well, we are suing for willful noncompliance and in the alternative for negligent noncompliance. Okay. So, you're suing for both? Yes, sir. Okay. So, let's just go straight then to willful noncompliance. So, what do you think you have to prove and can you tell me how you prove that? So, there are two pathways to willfulness under the Fair Credit Reporting Act and the pathway that we think is the most likely given the evidence that we have for a jury to decide that the violation was willful is the choice by ADP to make a reckless decision in reckless disregard of the rights of the reporting these obsolete records that antedate reports by more than seven years. And it chose to lump license revocation and exclusion from HHS and SAM based on an errant reading of Moran and the statute. And we think that that is something that a reasonable jury could find was a willful violation. Now, this all depends on the court agreeing with us and overturning the district court's decision. Okay. So, reckless disregard, though, is not sufficient. That's also the grounds for negligent, but that's necessary, but not a sufficient condition. So, we have all this language from SAFCO about the risk. Oh, I'm sorry. Right. And the risk of harm, of visiting harm to the consumers is greater than merely a negligent reading of the statute. So, we think that the ADP had more than enough information to understand that the plain language of the statute, the remedial nature of the FCRN. They could have done that either by reading the statute. So, you really do think it's just a plain reading of the statute, or is this because of Moran? Well, they had Moran, and they had the language of Moran, and the testimony is that they chose to disregard it because they deemed that this was inapplicable to license revocations and exclusion under the HHS-OIG list and under the SAM list. So, they also presented expert testimony about the interpretation of the statute. So, those seem to be factors we could consider to determine whether they were willful or not. Yes, Judge, I think that those are absolutely factors that you could consider and a jury could consider too. So- Why don't we determine willfulness as a matter of law? Whether their interpretation of a statute, which is a legal question, why is that not a matter of law? So- We're going to ask a jury what a reasonable interpretation of the statute is? That seems- It is a mixed question of law and fact, and a jury absolutely could make a determination that it was unreasonable for the defendants to ignore longstanding Ninth Circuit precedent and Moran. What facts were disputed? This was summary judgment. So, I think the district court was concluding that there were no disputed facts. They had an you know, they had their interpretation, but there's no dispute about the facts. It's just, was that a reasonable interpretation as a matter of law? Are there disputed facts? Are there some disputed facts you can point us to? I can't think of it right now, Judge. If the court agrees with us and that the district court's decision, the district court erred in its decision that this was subject to some exception of the fair credit reporting, that's not present in the actual statute, then we'd probably lose on the willfulness question. So, this is all dependent on how the court goes on the main question of whether the application of the law to the facts in this case was errored by the district court. So, the problem remains, you seem to be saying a jury could decide the violation was willful because of a misinterpretation of the law, which happened to coincide with the interpretation by the district court. I'm just baffled as to how that's a jury question. And you haven't identified in response to Judge Beatty's question, any dispute of fact. If there's not a dispute of fact, then what's the jury supposed to decide? In this case, the facts are that there are two dates in play and those two dates antedate the consumer report by more than seven years. But what is the disputed fact here? What is it the jury supposed to decide? Because those dates aren't disputed either. It seems to be purely a question of law. I concede that, Your Honor. Okay. So, we've taken you about four minutes over, but I will give you two minutes for rebuttal. Okay. I'm going to try. I've already forgotten. I apologize. Milliser. Go ahead. Just think of Budweiser. That sometimes works. Okay. If we need to, we won't cut you off. We'll let you have it. Thank you, Your Honor. If it may please the court, my name is Richard Milliser, and I'm here on behalf of Appley ADP Screening and Selection Services, Inc. Let me just start by saying ADP screening is not asserting any exception to the statute. As Your Honor pointed out, the statute merely provides any other adverse item of information which annotates the report by more than seven years. The statute doesn't specify when that year should start. And the adverse item of information in this case is, as Your Honor's pointed out, the exclusion, which is active. And by the way, there are no facts in dispute in this case. The exclusion is active, it's ongoing, and it covers a period of time. That was not remotely the situation addressed in Moran, which was dealt simply with an indictment of a criminal record that cannot be elongated by dismissal. And the court relied on statutory interpretation or an amendment to the statute that doesn't apply to other types of non-criminal adverse items of information. It relied on the elimination of disposition from the indictment, the prior CA-5. Sorry, go ahead. There seem to be two separate pieces of adverse information, one being the fact of her exclusion, which began on a certain date and continued through presumably the present or at least until within the seven years of the report. And the other being the reason for the exclusion, that her license had been revoked. Couldn't ADP have simply disclosed the exclusion without disclosing the reason that the license was revoked? Could it have? Yes, but it might have been in violation of a different provision of the FCRA. The FCRA requires public records that are adverse in the employment setting under 1681 CA-1 to be reported complete and up to date. That's 15 U.S.C. 1681 CA-1. ADP could report the exclusion, and I think the information's pretty easily detected or located in a web search. So if they just reported the exclusion, couldn't the client have located the rest of the information themselves? Why was ADP obligated to produce that? Well, it is correct, as the district pointed out, Your Honor, that ADP just saved the employer a small step at most. But we did report, this made clear, and the record's clear on this too, ADP did not report on the revocation. ADP reported on the title of the statutory subsection in which the exclusion was based, which is in the exclusion record itself. And by the way, that statutory section, the title of that statutory section says revocation or suspension or revocation. That's all it says. So all we said was her license under the statute, and that statutory section was revocation or suspension. That's part of the exclusion record. That's listed under offense description. So what compelled ADP to include this information? Because there are other grounds on which she could have been excluded that were far more innocent than this. This was a permissive exclusion, not a mandatory exclusion. And so there was nothing about the fact of exclusion that necessarily suggested a revocation or suspension. So that is additional adverse information. It's information within the exclusion record itself. So we're just reporting what is in the record and the statutory basis. No different than I understand that, but it isn't necessary to report the exclusion that you report the reasons for the exclusion. We could have just reported the exclusion, Your Honor, I suppose, but I don't think that's compliant with the FCRA, which requires us to be complete and provide accurate and complete information. We have two obligations, reasonable procedures to assure maximum possible accuracy. And also when we report adverse public records, in this case, public records must be complete and up to date. And by the way, that might have been what reporting the record itself, the statutory basis for the exclusion, could have easily have been possibly beneficial. You know, if you provide a more accurate report, which is complete, like you said, there are some subsections that are more nefarious. Perhaps the employer may have made a decision to hire this candidate because that was the statutory basis as opposed to some other statutory basis. But the logic of your argument that you have a statutory requirement to provide accurate and complete information, if that conflicts with the limitations on the reporting under the Fair Credit Reporting Act, it doesn't seem you can excuse disclosing something that you're not supposed to disclose just by saying we were being accurate. So for example, if the exclusion had occurred more than seven years before the reporting period, she was excluded, she was reinstated, it happened eight years ago. You couldn't report it and say we're doing it because we have a statutory obligation to be accurate and complete, right? So if, in fact, the adverse information back to the license revocation is a one-time event that happened more than seven years before your report, it seems you couldn't report that. But you could report, perhaps you could argue you could report the ongoing exclusion. So the two pieces of information, in my view, are separate. And I don't think you can say, oh, this is accurate, so we're going to give it to you. Because if it's not permitted under the Act, then that doesn't seem to be in other words, your invocation of that Act would mean that you could report anything and the Fair Credit Reporting Act has no meaning. The dates within it mean nothing. Your Honor, I think your position may be tenable. If ADP reported on the date and the events of the license revocation decision by the Arizona State of Nursing, that's not what it did. All it said was this is the statutory subsection, which is part of the exclusion record itself from which she's excluded. We didn't go outside and look at the Arizona State Nursing license and say how it was revoked, why it was revoked. We didn't produce that record. We just produced the bare information regarding the exclusion record. That's all we did. You cited the statutory basis for the exclusion, which when you get to the subsections A, B, C, 1, 2, I don't remember the specific. So once you get there, that's when it reveals that it was a license revocation. But couldn't ADP have simply revealed the statute without the subsections? So just indicating this was a permissive exclusion and indicating an exclusion without going into that detail. That relied on information that predated the reporting period. It could have, Your Honor, sure. But there's nothing in the FCRA or case law anywhere that suggests we can't cite the statutory subsection for the exclusion. That's being more specific. That's more helpful. And it could be exculpatory for the consumer. It's certainly accurate. But it's a different question to say we're reporting on her actual license. We weren't. We didn't report on her license. We just reported on the basis for the exclusion. Does that answer your question? Hopefully. I think so. But I think what your answer goes to is this wasn't willful or negligent. Basically, I think you're leading to the next point that even if we shouldn't disclose that, wasn't willful or negligent for a variety of reasons. And so we don't have liability. Correct, Your Honor. I think we do have the right under the statute to report that information over reporting on the record itself as the district court correctly held. So I don't think we violate the statute. But if you were to take a really restrictive view and don't look at the statute as a whole and disagree with the district court, there's absolutely no basis in this case to find willfulness. And I think negligence was waived on appeal. But even if it wasn't, negligency, too, because both are an objective or objective reasonable standard. And so objective reasonableness, interpretation. This is absolutely on a government exclusion list existence and reporting the record on the exclusion list is absolutely an issue of first impression. So if the Moran case is at all relevant to this, it's relevant on the issues of willfulness because it's really the exact parallel that the Ninth Circuit considered in 2022 decision. One is that's an issue of first impression. Two, there's administrative guidance much more than existed in Moran. We have a post 1988 administrative decision or FTC administrative guidance on open warrants. And by that way, that post 1998 opinion letter guidance, which was in December of 1999, also spoke about open confinements, as your honor pointed out. Also, the 40 years report, which was issued in 2011, talked about open warrants. How does an open warrant help you here? The FTC has said open warrants, which are just like exclusions that are active and ongoing, open warrants can be reported as long as they remain open. So an open report, regardless of when it was started. That would be an exclusion. That doesn't explain why you can report on the revocation. Well, that goes to the issue of my position that revocation is part of the exclusion record itself. So it's a good question, your honor. I'm going back to my prior argument. And ADP's employees took a look at the Moran decision in connection with this disclosure, didn't they? Correct. Correct. They considered Moran and clearly is inapplicable. So, but there's nothing in the FTC opinion, your honor, on open warrants or the 40 years report 2011 on unpaid liens that say you can't report the entire record. That is a matter of first impression, both within judicial first impression, federal courts, as well as in the administrative guidance. They just won't trust that point. So the district court did some pretty good statutory interpretation and said, you look at the record in and of itself. What are we actually reporting? Reporting something that could be helpful to the claimant because it's accurate or the appellant in this case, which is. How would this be helpful? How would this be helpful to? Because referring the statutory basis for the exclusion may be irrelevant to certain employers. Well, like one of your honors indicated, there was way more way more harmful or or less beneficial reasons why she may have lost her license. Yeah, but this was this was this was permissive, not mandatory. There were a lot of there were a lot of reasons that would have been a whole lot better for than indicating that her license had been revoked by the state of Arizona. That that I just I have a hard time understanding how in in any universe that that's good information to be reporting to a potential employer. Well, I would say, well, your honor. If you're excluded for some other reason, that's more. That's that's that's more nefarious. I think that someone could take the position that, hey, she just lost her license. That doesn't preclude her from doing this job. But if there were some more, there were worse things that she could have done. I mean, this, you know, the whole the whole thing here, if you if you just left this out, the whole question of the revocation, the employer would have been on notice here and they can ask her. They can go to some other source and try to figure out what the what the reason is. They can go to the records themselves. The question is whether ADP can report this. And I have a hard time understanding why the fact of the revocation by Arizona can be anything other than adverse. Well, we didn't. Well, your honor, and I I I not disagree with you on that at all. We just report on the statutory basis, which is suspension or revocation. That's all we reported on, not the actual event. But regardless of that, on the willfulness issue, the regulations don't speak to this issue. What can the incidents and details within the record be reported? The district court said they could for textual interpretation purposes. The law doesn't speak to that federal case law. Industry standard is we have an expert also in the record are two reports post Moran ran by two other larger. CRA's that reported the exact same thing, including the statutory basis for the exclusion. So and on 4th, the fact that the district court looked at this very carefully, considered everything and made a consider decision that we were permitted to. For some of the reasons we've talked about today that we were permit our client was reported permitted to report the statutory basis for the exclusion. Could part of the record itself. So it's no different than a criminal conviction reporting the criminal basis or to arrest record. That's a big that's that's permissible to be reported. You know, reporting what items were what he was arrested for or a criminal record where someone committed and a robbery that occurred outside arrest outside the. Outside the seven years, but that robbery is listed in the in the arrest record. That's clearly I don't think anyone's arguing that that couldn't be reported because it's part of the arrest record itself. So hopefully according to your example, if somebody were charged with several crimes and they ended up pleading to one offense and they were convicted. The guilty plea would be reportable, but seven years later, could you still report all the dismissed charges? No, you can't report dismissed charges. I'm not. That's not what I said. The underlying events within the record, right? So how does that differ really conceptually from you could report the continuing exclusion, but you can't report the reason for it? More than seven years have passed. Why is that different from the dismissed charges example? I I was talking about someone who had a conviction or arrest that was reportable. I know it was. You're just sort of fighting the hypothetical here. I mean, I'm asking you to compare and contrast. Tell me why this is different. Why? Why is this conceptually different and under the statute that you should be able to report the the outdated information? Sorry, I may not be understanding your question. I apologize, but I think what we did here was just report the actual record and the statutory basis, just like if you had a criminal conviction, report the basis for that. You don't say someone was convicted. You say what? What were they convicted of? But but I want to follow up on Judge Beatty's question because I think it's really understood. What if the basis for the HHS OIG's report here was that they had been arrested more than seven years before and the charges had then been dismissed? That's exactly Moran. Wouldn't you have looked at Moran and said, you know, something that it's the arrest was more than seven years and the dismissal is less than seven years, but we can't report on the dismissal. Yeah, I'm saying you're probably right, Your Honor. We can't. We cannot. We cannot report on things that are independent pieces of information that are independent pieces of information that's older than seven years. But we just report on the statutory basis for exclusion. That's it. We didn't report on her. We didn't go and give give them a copy of her nursing license replication. We didn't do that. We just reported on the underlying statutory basis we cited to the Judge Beatty was tracking down with you. The fact that her license was revoked can probably in no circumstances be a good thing. It's going to be a piece of adverse information. And so saying you it was it was in the statute, I don't see how that how that changes the situation that it was still disclosed and it was more than seven years earlier. Yeah, I mean, we're getting into suspense, but I really think that, you know, as we look at what ADP actually reported and you look at what they actually reported, they just they merely reported the statutory subsection. That's it. They didn't report that her license had been revoked. In fact, it says suspension or evocation pointing them to the statutory basis, just like a criminal conduct or just like an arrest warrant. What was that? What was the person arrested for? That's what we reported. And I think the and just I'll just wrap up here over over time. But I think the unless you have questions, but I believe that there's nothing in the statute or any regulation that says we can't report the details within the record. And the incidental details of the record, which is the data started in the statutory basis itself for the exclusion. But even if you disagree and say, no, we shouldn't have done that, and you read it differently than ADP, I still think it's an objectively reasonable standard and certainly not sufficient to reach willfulness because it's an issue of first impression. There's no regulation on this question. There's no case law on it. It's industry norm established by not only our unrebutted expert, but also by the record. I can point you to the record sections, but two other larger CRAs did the exact same thing that ADP. So it's clearly industry norm. And then the district court took a very reasonable reason interpretation of the statute, looked at this very issue and agreed with this on it. So for all those reasons, even if we're wrong, we can't be I don't think there's any basis for finding a willfulness, your honors. For all those reasons, I respectfully request that the court affirmed the decision of the district court granting summary judgment. Thank you for your time. If you have any more questions. This far. All right. I'm seeing none. We'll go back to your opposing counsel, Ms. Rockus, and we have two minutes. Thank you, Judge. I have no rebuttal. All right. Judge Bivier, Judge Clifton, do you have any questions for Ms. Rockus? Okay. Thank you. Thank you both for your arguments this afternoon. And this case is submitted. Thank you, your honors.
judges: CLIFTON, BYBEE, BADE